# Exhibit C



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/939,903 | 09/13/2004 | Donn Rochette | 78802 (120-1  US) | 5216 |

27975        7590        06/03/2008
ALLEN, DYER, DOPPELT, MILBRATH & GILCHRIST P.A.
1401 CITRUS CENTER 255 SOUTH ORANGE AVENUE
P.O. BOX 3791
ORLANDO, FL 32802-3791

| EXAMINER |
|---|
| BAUM, RONALD |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2139 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/03/2008 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated  "Notification Date" to the following e-mail  address(es):

creganoa@addmg.com

PTOL-90A  (Rev. 04/07)

**Page 1**

| ***Office Action Summary*** | Application No. | Applicant(s) |
| | 10/939,903 | ROCHETTE ET AL. |
| | Examiner | Art Unit |
| | RONALD BAUM | 2139 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>13 September 2004</u>.
2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-34</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-34</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☒ The drawing(s) filed on <u>13 September 2004</u> is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All   b)☐ Some * c)☐ None of:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>20080521</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____ .

Application/Control Number: 10/939,903                                    Page 2
Art Unit: 2139

## DETAILED ACTION

1.      This action is in reply to applicant's correspondence of 13 September 2004.

2.      Claims 1-34 are pending for examination.

3.      Claims 1-34 are rejected.


### *Claim Objections*

4.      Claim 1 is objected to because of the following informalities:  the phrase "resident oh the

server" is assumed to correctly be "resident on the server".  Appropriate correction is required.


### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on
sale in this country, more than one year prior to the date of application for patent in the United States.

5.      Claims 1-34 are rejected under 35 U.S.C. 102(b) as being anticipated by Forbes et al,

U.S. Patent 6,381,742 B2 ("Forbes et al ").


6.      As per claim 1; "In a system

        having a plurality of servers with

                operating systems that differ,

        operating in

                disparate computing environments,

        wherein each server includes

**Page 3**

Application/Control Number: 10/939,903                                    Page 3
Art Unit: 2139

a processor and

an operating system including

a kernel

a set of associated local system files

compatible with the processor,

a method of providing at least some of the servers in the system with

secure, executable, applications

related to a service,

wherein the applications

may be executed in

a secure environment,

wherein the applications each include

an object executable by

at least some of the different operating systems

for performing a task

related to the service,

the method comprising the steps of:

storing in memory accessible to at least some of the servers

a plurality of secure containers of application software,

each container comprising

one or more of the executable applications and

a set of associated system files

**Page 4**

Application/Control Number: 10/939,903                              Page 4
Art Unit: 2139

required to execute the one or more applications,

for use with a local kernel

residing permanently on

one of the servers [Forbes et

al Abstract, col. 2,lines 33-col. 3,line

56, figures 1-4 and associated

descriptions, whereas the use of a

software  package manager in a

network environment (i.e., ' a

plurality of servers … disparate

computing environments … storing

in memory accessible to …') using a

distribution unit containing

components for a software package

and manifest file that supports the

installation, execution/runtime

aspects (i.e., ' object executable …

performing a task …') of

predetermined applications (i.e., '…

providing at least some of the servers

… secure, executable, applications

related to a service … plurality of

**Page 5**

Application/Control Number: 10/939,903                                    Page 5

Art Unit: 2139

secure containers of application

software ') and associated services

across all types of code (i.e., '… a set

of associated system files …') and

operating systems (i.e., ' operating

systems that differ '), so as to allow

easily extending new code types as

they arise (e.g., Forbes et al col.

2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations

as broadly interpreted by the

examiner.];

wherein the set of associated system files

are compatible with

a local kernel of

at least some of the plurality of different operating systems,

the containers of

application software

excluding a kernel [Forbes et al Abstract, col.

2,lines 33-col. 3,line 56, figures 1-4 and associated

descriptions, whereas the use of a software  package

manager using a distribution unit containing components

**Page 6**

Application/Control Number: 10/939,903                                      Page 6
Art Unit: 2139

> for a software package and manifest file that supports the
> installation, execution/runtime aspects (i.e., ' compatible
> with … local kernel of …') of predetermined applications
> (i.e., '… the containers of … application software ') and
> associated services across all types of code and operating
> systems (i.e., ' plurality of different operating systems …
> excluding a kernel '), so as to allow easily extending new
> code types as they arise (e.g., Forbes et al col. 2,lines 38-
> col. 3,lines 49), clearly encompasses the claimed
> limitations as broadly interpreted by the examiner.], and

wherein some or all of the associated system files

within a container stored in memory

are utilized in place of

the associated local system files

resident oh the server prior to

said storing step [Forbes et al Abstract, col.

2,lines 33-col. 3,line 56, figures 1-4 and associated

descriptions, whereas the use of a software  package

manager using a distribution unit containing

components for a software package and manifest

file that supports the installation, execution/runtime

aspects (i.e., ' are utilized in place of … associated

Application/Control Number: 10/939,903                                                Page 7
Art Unit: 2139

local system files …') of predetermined applications

and associated services across all types of code and

operating systems, so as to allow easily extending

new code types as they arise (e.g., Forbes et al col.

2,lines 38-col. 3,lines 49), clearly encompasses the

claimed limitations as broadly interpreted by the

examiner.].".


And further as per claim 17, this is the apparatus/system claim for the method claim 1

above, and is rejected for the same reasons provided for the claim 1 rejection; "A computing

system

for performing

a plurality of tasks

each comprising

a plurality of processes

comprising:

a plurality of

secure stored containers of

associated files

accessible to, and

for execution on,

one or more servers,

**Page 8**

Application/Control Number: 10/939,903                                      Page 8
Art Unit: 2139

  each container being

    mutually exclusive of the other,

      such that read/write files within a container

        cannot be shared with other containers,

  each container of files having

    its own unique identity associated therewith,

    said identity comprising at least one of

      an IP address,

      a host name, and

      a MAC address;

 wherein, the plurality of files

   within each of the plurality of containers comprise

    one or more application programs including

      one or more processes, and

    associated system files

      for use in executing

        the one or more processes,

      each container having

        its own execution file associated therewith

         for starting one or more applications,

    in operation, each container utilizing

      a kernel resident on the server and

**Page 9**

Application/Control Number: 10/939,903                                               Page 9
Art Unit: 2139

> wherein each container exclusively uses
>
> a kernel in an underlying operation system
>
> in which it
>
> is running and
>
> is absent its own kernel; and,
>
> a run time module
>
> for monitoring system calls from
>
> applications associated with
>
> one or more containers and
>
> for providing control of
>
> the one or more applications.".

7.    Claim 2 additionally recites the limitations that; "A method as defined in claim 1, wherein

> each container has
>
> an execution file associated therewith
>
> for starting the one or more applications.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager distribution unit containing components for a software package and manifest file (i.e., '… container has …') that supports the installation, execution/runtime aspects (i.e., ' an execution file associated therewith … starting the one or more applications …') of predetermined applications/associated services

**Page 10**

Application/Control Number: 10/939,903                                    Page 10
Art Unit: 2139

across all types of code and operating systems (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49),
clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest
such limitations.


8.      Claim 3 additionally recites the limitations that; "A method as defined in claim 2,
wherein

        the execution file includes

                instructions related to

                        an order in which

                                executable applications within

                                will be executed.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and
associated descriptions, whereas the use of a software package manager distribution unit
containing components for a software package and manifest file that supports the installation,
execution/runtime aspects (i.e., ' execution file includes … order in which … will be executed ')
of predetermined applications/associated services across all types of code and operating systems
(e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as
broadly interpreted by the examiner.) suggest such limitations.


9.      Claim 4 additionally recites the limitations that; "A method as defined in claim 1 further
comprising the step of

        pre-identifying applications and system files

**Page 11**

Application/Control Number: 10/939,903                                      Page 11
Art Unit: 2139

> required for association with
>
> > the one or more containers
> >
> > > prior to said storing step.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager distribution unit containing components for a software package and manifest file (i.e., '… pre-identifying applications and system files …') that supports the installation, execution/runtime aspects (i.e., ' required for association with … one or more containers …') of predetermined applications/associated services across all types of code and operating systems (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


10.     Claim 5 additionally recites the limitations that; "A method as defined in claim 2, further comprising the step of

> modifying at least some of the system files
>
> > to provide an association with
> >
> > > a container specific identity
> > >
> > > > assigned to the container.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects (i.e., ' modifying at least

**Page 12**

Application/Control Number: 10/939,903                                    Page 12
Art Unit: 2139

some of the system file …') of predetermined applications /associated services across all types of

code (i.e., '… provide an association with … container specific identity ') and operating systems,

so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col.

3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.)

suggest such limitations.


11.     Claim 6 additionally recites the limitations that; "A method as defined in claim 2,

comprising the step of

        assigning a unique associated identity

                to each of a plurality of the containers,

        wherein the identity includes

                at least one of

                        IP address,

                        host name, and

                        MAC address.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects (i.e., ' assigning a unique

associated identity …') of predetermined applications /associated services across all types of

code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes

Application/Control Number: 10/939,903                                    Page 13
Art Unit: 2139

et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly

interpreted by the examiner.) suggest such limitations.


12.    Claim 7 additionally recites the limitations that; "A method as defined in claim 2 further

comprising the step of

        modifying at least some of the system files

                to define container specific mount points

                        associated with the container.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software  package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects (i.e., ' modifying at least

some of the system files … define container specific mount points ') of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


13.    Claim 8 additionally recites the limitations that; "A method as defined in claim 1,

wherein

        the one or more applications and associated system files

                are retrieved from a computer system having

**Page 14**

Application/Control Number: 10/939,903                                              Page 14
Art Unit: 2139

a plurality of secure containers.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems (i.e., ' one or more

applications and associated system files … a plurality of secure containers '), so as to allow

easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49),

clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest

such limitations.


14.     Claim 9 additionally recites the limitations that; "A method as defined in claim 2,

wherein

        server information

                related to hardware resource usage

                        including at least one of

                                CPU memory,

                                network bandwidth, and

                                disk allocation

                is associated with

                        at least some of the containers

                                prior to the applications within the containers

**Page 15**

Application/Control Number: 10/939,903                                          Page 15
Art Unit: 2139

being executed.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects (i.e., ' server information

related to hardware resource usage … associated with … prior to the applications … executed ')

of predetermined applications /associated services across all types of code/operating systems, so

as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col.

3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.)

suggest such limitations.


15.      Claim 10 additionally recites the limitations that; "A method as defined in claim 2,

wherein

        in operation when applications are executed,

                applications within a container

                        have no access to

                                system files or applications in other containers or

                                system files within the operating system

                        during execution thereof

                                if those applications or system files

                                        are read/write files.".

**Page 16**

Application/Control Number: 10/939,903                                          Page 16
Art Unit: 2139

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects (i.e., ' applications are

executed … have no access to … system files or applications in other containers … ') of

predetermined applications /associated services across all types of code/operating systems, so as

to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col.

3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.)

suggest such limitations.


16.       Claim 11 additionally recites the limitations that; "A method as defined in claim 2,

wherein

        containers include

                files stored in

                        network file storage, and

                parameters forming

                        descriptors of containers stored in

                                a separate location.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment (i.e., '… network file storage  … separate location …') using a distribution unit

containing components for a software package and manifest file that supports the installation,

**Page 17**

Application/Control Number: 10/939,903                                    Page 17
Art Unit: 2139

execution/runtime aspects of predetermined applications /associated services across all types of

code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes

et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly

interpreted by the examiner.) suggest such limitations.


17.      Claim 12 additionally recites the limitations that; "A method as defined in claim 11,

further comprising the step of

       merging

               the files stored in network storage with

               the parameters

       to affect

               the step of storing in claim 1.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment (i.e., '… merging  … files stored in network storage … parameters …') using a

distribution unit containing components for a software package and manifest file that supports

the installation, execution/runtime aspects of predetermined applications /associated services

across all types of code/operating systems, so as to allow easily extending new code types as

they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed

limitations as broadly interpreted by the examiner.) suggest such limitations.

Application/Control Number: 10/939,903                                    Page 18
Art Unit: 2139

18.    Claim 13 additionally recites the limitations that; "A method as defined in claim 1 further

comprising the step of

associating with a container

a stored history of when processes related to applications within the container

are executed for at least one of,

tracking statistics,

resource allocation, and

for monitoring the status of the application.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects (i.e., ' container … stored

history of when processes … resource allocation ') of predetermined applications /associated

services across all types of code/operating systems, so as to allow easily extending new code

types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the

claimed limitations as broadly interpreted by the examiner.) suggest such limitations.

19.    Claim 14 additionally recites the limitations that; "A method as defined in claim 1

comprising the step of

creating containers prior to

said step of storing containers in memory,

wherein containers are created by:

**Page 19**

Application/Control Number: 10/939,903                                    Page 19
Art Unit: 2139

       a) running an instance of a service on a server;

       b) determining which files are being used; and,

       c) copying applications and associated system files to memory.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation (i.e., ' creating containers prior to … containers are created by … determining which files are being used '), execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


20.    Claim 15 additionally recites the limitations that; "A method as defined in claim 14 comprising the steps of:

      assigning an identity to the containers

          including at least one of

               a unique IP address,

               a unique MAC address and

               an estimated resource allocation;

      installing the container

          on a server; and,

**Page 20**

Application/Control Number: 10/939,903                                    Page 20
Art Unit: 2139

> testing the applications and files
>
>> within the container.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types (i.e., ' assigning an identity to the containers … containers are created by … including at least one of … a unique IP address … installing the container … testing the applications and files ') as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


21.     Claim 16 additionally recites the limitations that; "A method as defined in claim 1 comprising the step of

> creating containers prior to
>
>> said step of storing containers in memory,
>
> wherein a step of creating containers includes:
>
>> using a skeleton set of system files
>
>>> as a container starting point and
>
>> installing applications into
>
>>> that set of files.".

Application/Control Number: 10/939,903                                                  Page 21
Art Unit: 2139

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation (i.e., ' creating containers prior to … containers

includes … installing applications into '), execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


22.     Claim 21 additionally recites the limitations that; "A method as defined in claim 1 further

comprising the step of

        installing a service on

                a target server selected from

                        one of the plurality of servers,

        wherein the step of installing the service includes the steps of:

                using a graphical user interface,

                associating a unique icon representing

                        a service with an unique icon representing

                                a server for hosting applications

                                        related to the service and

                for executing the service,

**Page 22**

Application/Control Number: 10/939,903                                      Page 22
Art Unit: 2139

> so as to cause the applications to be
>
> distributed to, and
>
> installed on
>
> the target server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation (i.e., ' installing a service … one of the plurality of servers … installing the service includes … a graphical user interface …'), execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


23.     Claim 22 additionally recites the limitations that; "A method as defined in claim 21 wherein

> the target server and
>
> the graphical user interface
>
> are at remote locations.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and

**Page 23**

Application/Control Number: 10/939,903                                    Page 23
Art Unit: 2139

manifest file that supports the installation (i.e., ' target server … graphical user interface … at

remote locations  …'), execution/runtime aspects of predetermined applications /associated

services across all types of code/operating systems, so as to allow easily extending new code

types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the

claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


24.    Claim 23 additionally recites the limitations that; "A method as defined in claim 22,

wherein

the graphical user interface

is installed on a computing platform, and

wherein the computing platform

is a different computing platform than

the target server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation (i.e., ' graphical user interface … installed on a

computing platform  … different computing platform '), execution/runtime aspects of

predetermined applications /associated services across all types of code/operating systems, so as

to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col.

3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.)

suggest such limitations.

Application/Control Number: 10/939,903                                             Page 24
Art Unit: 2139

25.    Claim 24 additionally recites the limitations that; "A method as defined in claim 23,

wherein the step of

    associating includes

        the step of

            relatively moving

                the unique icon

                    representing the service to

                the unique icon

                    representing a server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.

26.    Claim 25 additionally recites the limitations that; "A method claim 21, further

comprising, the step of

    testing to determine if

Application/Control Number: 10/939,903                                    Page 25
Art Unit: 2139

> the selected target server is
>
> > a valid computing platform,
>
> prior to causing the applications to be
>
> > distributed to, and
> >
> > installed on
> >
> > > the target server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


27.    Claim 26 additionally recites the limitations that; "A method according to claim 21 further comprising, the step of

> creating a user account
>
> > for the service.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and

**Page 26**

Application/Control Number: 10/939,903                                    Page 26
Art Unit: 2139

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


28.      Claim 27 additionally recites the limitations that; "A method as defined in claim 21,

further comprising the step of

 installing files

   specific to the selected application

on the selected server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


29.      Claim 28 additionally recites the limitations that; "A method according to claim 21

further comprising the steps of

**Page 27**

Application/Control Number: 10/939,903                                    Page 27
Art Unit: 2139

> setting file access permissions
>
>> to allow a user
>>
>>> to access
>>>
>>>> the one of the applications
>>>>
>>>>> to be distributed.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.


30.    Claim 29 additionally recites the limitations that; "A method as defined in claim 24 further comprising the step of

> starting a distributed software application.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily

**Page 28**

Application/Control Number: 10/939,903                                                      Page 28
Art Unit: 2139

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


31.    Claim 30 additionally recites the limitations that; "A method according to anyone of

claims 24 further comprising the steps of

    updating a console

        on the selected target server

    with information

        indicating that the service is resident

           on the selected target server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


32.    Claim 31 additionally recites the limitations that; "A method as defined in claim 1,

further comprising the step of:

**Page 29**

Application/Control Number: 10/939,903                                      Page 29

Art Unit: 2139

    de-installing a service from a server,

      comprising the steps of:

        displaying the icon

          representing the service;

        displaying a the icon

          representing the server on which

            the service is installed; and

        utilizing

          the icon representing the service and

          the icon representing the server

        to initiating the de-installation of

          the selected service from the server

            on which it was installed.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime, uninstalling (i.e., '… de-installing a service from a server  …') aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.

Application/Control Number: 10/939,903                                    Page 30
Art Unit: 2139

33.    Claim 32 additionally recites the limitations that; "A method according to claim 31

further comprising the step of

    separating

        icon representing the service from

        the icon representing the server.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.


34.    Claim 33 additionally recites the limitations that; "A method according to claim 31

further comprising the step of

    testing whether

        the selected server

            is a valid computing platform

                for de-installation of the service.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

**Page 31**

Application/Control Number: 10/939,903                                    Page 31
Art Unit: 2139

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime, uninstalling (i.e., '… de-installing

a service from a server  …') aspects of predetermined applications /associated services across all

types of code/operating systems, so as to allow easily extending new code types as they arise

(e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as

broadly interpreted by the examiner.) suggest such limitations.


35.     Claim 34 additionally recites the limitations that; "A method according to claim 31

further comprising the step of

        copying data file changes

                specific to the service

        back to a storage medium

                from which the data file changes originated

                        prior to installation.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.

Application/Control Number: 10/939,903                                          Page 32

Art Unit: 2139

36.     Claim 18 additionally recites the limitations that; "A computing system as defined in

claim 17, further comprising

     a scheduler comprising

          values related to an allotted time

               in which processes within a container

                    may utilize predetermined resources.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.

37.     Claim 19 additionally recites the limitations that; "A computing system as defined in

claim 18, wherein

     the run time module includes

          an intercepting module associated with the plurality of containers

               for intercepting system calls

                    from any of the plurality of containers and

Application/Control Number: 10/939,903                                    Page 33
Art Unit: 2139

> for providing values
>
> > alternate to values the kernel would have assigned
> >
> > > in response to the system calls,
>
> > so that the containers
>
> > > can run independently of one another
> > >
> > > > without contention,
> > > >
> > > > in a secure manner,
>
> > the values corresponding to
> >
> > > at least one of
> > >
> > > > the IP address,
> > > >
> > > > the host name and
> > > >
> > > > the MAC_Address.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.

**Page 34**

Application/Control Number: 10/939,903                                                    Page 34
Art Unit: 2139

38.      Claim 20 additionally recites the limitations that; "A computing system as defined in

claim 17, wherein

    the run time module performs:

        monitoring resource usage

           of applications executing;

        intercepting system calls to kernel mode,

           made by the at least one respective application within a container,

               from user mode

               to kernel mode;

        comparing the monitored resource usage of

           the at least one respective application with

           the resource limits; and,

        forwarding the system calls to

           a kernel

               on the basis of the comparison between

                   the monitored resource usage and

                   the resource limits.".

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and

associated descriptions, whereas the use of a software package manager in a network

environment using a distribution unit containing components for a software package and

manifest file that supports the installation, execution/runtime aspects of predetermined

applications /associated services across all types of code/operating systems, so as to allow easily

Application/Control Number: 10/939,903                                    Page 35
Art Unit: 2139

extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly

encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such

limitations.

Application/Control Number: 10/939,903                                      Page 36
Art Unit: 2139

*Conclusion*

39.     Any inquiry concerning this communication or earlier communications from examiner

should be directed to Ronald Baum, whose telephone number is (571) 272-3861, and whose

unofficial Fax number is (571) 273-3861 and unofficial email is Ronald.baum@uspto.gov. The

examiner can normally be reached Monday through Thursday from 8:00 AM to 5:30 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Kristine Kincaid, can be reached at (571) 272-4063. The Fax number for the

organization where this application is assigned is **571-273-8300**.

        Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. For more information for

unpublished applications is available through Private PAIR only. For more information about the

PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).


                                    Ronald Baum

                                    Patent Examiner


                                    /R. B./

                                    Examiner, Art Unit 2139

                                    /Kristine Kincaid/

                                    Supervisory Patent Examiner, Art Unit 2139


**Page 37**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Patent Application of: | ) | Atty. Docket No.: |
| **ROCHETTE ET AL.** | ) | **78802 (120-1 US)** |
| | ) | |
| Serial No. **10/939,903** | ) | Art Unit: **2139** |
| | ) | |
| Filing Date: **SEPTEMBER 13, 2004** | ) | Examiner: |
| | ) | **RONALD BAUM** |
| Confirmation No. **5216** | ) | |
| | ) | |
| For: **SYSTEM FOR CONTAINERIZATION** | ) | |
| **OF APPLICATION SETS** | ) | |

**AMENDMENT**

**EFILED**
Commissioner of Patents

Dear Sir:

In response to the Office Action dated June 3, 2008 please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims, which begins on page 2 of this paper.

**Remarks** begin on page 10 of this paper.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

<u>**Amendments to the Claims**</u>

1. (currently amended) In a system having a plurality of
servers with operating systems that differ, operating in
disparate computing environments, wherein each server includes
a processor and an operating system including a kernel a set
of associated local system files compatible with the
processor, a method of providing at least some of the servers
in the system with secure, executable, applications related to
a service, wherein the applications [[may be]]<u>are</u> executed in
a secure environment, wherein the applications each include an
object executable by at least some of the different operating
systems for performing a task related to the service, the
method comprising ~~the steps of~~:

storing in memory accessible to at least some of the
servers a plurality of secure containers of application
software, each container comprising one or more of the
executable applications and a set of associated system files
required to execute the one or more applications, for use with
a local kernel residing permanently on one of the servers;
wherein the set of associated system files are compatible with
a local kernel of at least some of the plurality of different
operating systems, the containers of application software
excluding a kernel, ~~and~~ wherein some or all of the associated
system files within a container stored in memory are utilized
in place of the associated local system files <u>that remain</u>
resident on the server ~~prior to said storing step,~~ <u>wherein</u>
<u>said associated system files utilized in place of the</u>
<u>associated local system files are copies or modified copies of</u>
<u>the associated local system files that remain resident on the</u>
<u>server, and wherein the application software cannot be shared</u>

**Page 39**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

between the plurality of secure containers of application
software, and wherein each of the containers has a unique root
file system that is different from an operating system's root
file system.

2. (original) A method as defined in claim 1, wherein each
container has an execution file associated therewith for
starting the one or more applications.

3. (original) A method as defined in claim 2, wherein the
execution file includes instructions related to an order in
which executable applications within will be executed.

4. (original) A method as defined in claim 1 further
comprising the step of pre-identifying applications and system
files required for association with the one or more containers
prior to said storing step.

5. (currently amended) A method as defined in claim 2, further
comprising the step of modifying at least some of the
associated system files in plural containers to provide an
association with a container specific identity assigned to ~~the~~
a particular container.

6. (original) A method as defined in claim 2, comprising the
step of assigning a unique associated identity to each of a
plurality of the containers, wherein the identity includes at
least one of IP address, host name, and MAC address.

7. (original) A method as defined in claim 2 further
comprising the step of modifying at least some of the system

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed:  **09/13/2004**
_____/

files to define container specific mount points associated
with the container.

8. (original) A method as defined in claim 1, wherein the one
or more applications and associated system files are retrieved
from a computer system having a plurality of secure
containers.

9. (original) A method as defined in claim 2, wherein server
information related to hardware resource usage including at
least one of CPU memory, network bandwidth, and disk
allocation is associated with at least some of the containers
prior to the applications within the containers being
executed.

10. (currently amended) A method as defined in claim 2,
wherein in operation when ~~applications~~ an application residing
within a container ~~are~~ is executed , ~~applications~~ said
application ~~within a container have~~ has no access to system
files or applications in other containers or to system files
within the operating system during execution thereof ~~if those
applications or system files are read/write files~~.

11. (original) A method as defined in claim 2, wherein
containers include files stored in network file storage, and
parameters forming descriptors of containers stored in a
separate location.

12. (original) A method as defined in claim 11, further
comprising the step of merging the files stored in network
storage with the parameters to affect the step of storing in
claim 1.

4

**Page 41**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

13. (currently amended) A method as defined in claim 1 further
comprising the step of associating with a ~~container~~ plurality
of containers a stored history of when processes related to
applications within the container are executed for at least
one of, tracking statistics, resource allocation, and for
monitoring the status of the application.

14. (currently amended) A method as defined in claim 1
comprising the step of creating containers prior to said step
of storing containers in memory, wherein containers are
created by:
a) running an instance of a service on a server;
b) determining which files are being used; and,
c) copying applications and associated system files to memory
without overwriting the associated system files so as to
provide a second instance of the applications and associated
system files.

15. (original) A method as defined in claim 14 comprising the
steps of:
assigning an identity to the containers including at least one
of a unique IP address, a unique Mac address and  an estimated
resource allocation;
installing the container on a server; and,
testing the applications and files within the container.

16. (original) A method as defined in claim 1 comprising the
step of creating containers prior to said step of storing
containers in memory, wherein a step of creating containers
includes:
using a skeleton set of system files as a container starting
point and installing applications into that set of files.

**Page 42**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

17. (currently amended) A computing system for performing a plurality of tasks each comprising a plurality of processes comprising:

a system having a plurality of secure ~~stored~~ containers of associated files accessible to, and for execution on, one or more servers, each container being mutually exclusive of the other, such that read/write files within a container cannot be shared with other containers, each container of files ~~having~~ is said to have its own unique identity associated therewith, said identity comprising at least one of an IP address, a host name, and a Mac address; wherein, the plurality of files within each of the plurality of containers comprise one or more application programs including one or more processes, and associated system files for use in executing the one or more processes wherein the associated system files are files that are copies of files or modified copies of files that remain as part of the operating system, each container having its own execution file associated therewith for starting one or more applications, in operation, each container utilizing a  kernel resident on the server and wherein each container exclusively uses a  kernel in an underlying operation system in which it is running and is absent its own kernel; and,
a run time module for monitoring system calls from applications associated with one or more containers and for providing control of the one or more applications.

18. (original) A computing system as defined in claim 17, further comprising a scheduler comprising values related to an allotted time in which processes within a container may utilize predetermined resources.

**Page 43**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed:  **09/13/2004**
_____/

19. (original) A computing system as defined in claim 18,
wherein the run time module includes an intercepting module
associated with the plurality of containers for intercepting
system calls from any of the plurality of containers and for
providing values alternate to values the kernel would have
assigned in response to the system calls, so that the
containers can run independently of one another without
contention, in a secure manner, the values corresponding to at
least one of the IP address, the host name and the
Mac_Address.


20. (original) A computing system as defined in claim 17,
wherein the run time module performs:
monitoring resource usage of applications executing;
intercepting system calls to kernel mode, made by the at least
one respective application within a container, from user mode
to kernel mode;
comparing the monitored resource usage of the at least one
respective application with the resource limits; and,
forwarding the system calls to a kernel on the basis of the
comparison between the monitored resource usage and the
resource limits.


21. (currently amended) A method as defined in claim 1 further
comprising ~~the step of~~ installing a service on a target server
selected from one of the plurality of servers, wherein ~~the~~
~~step of~~ installing the service includes ~~the steps of~~:
using a graphical user interface, associating a unique icon
representing a service with an unique icon representing a
server for hosting applications related to the service and for
executing the service, so as to cause the applications to be
distributed to, and installed on the target server.

7

**Page 44**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

22. (original) A method as defined in claim 21 wherein the target server and the graphical user interface are at remote locations.

23. (original) A method as defined in claim 22, wherein the graphical user interface is installed on a computing platform, and wherein the computing platform is a different computing platform than the target server.

24. (original) A method as defined in claim 23, wherein the step of associating includes the step of relatively moving the unique icon representing the service to the unique icon representing a server.

25. (original) A method claim 21, further comprising, the step of testing to determine if the selected target server is a valid computing platform, prior to causing the applications to be distributed to, and installed on the target server.

26. (currently amended) A method according to claim 21 further comprising, the step of creating a user account for the service.

27. (original) A method as defined in claim 21, further comprising the step of installing files specific to the selected application on the selected server.

28. (original) A method according to claim 21 further comprising the steps of setting file access permissions to allow a user to access the one of the applications to be distributed.

**Page 45**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

29. (currently amended) A method as defined in claim 24 further comprising ~~the step of~~ starting a distributed software application.

30. (currently amended) A method according to anyone of claims 24 further comprising ~~the steps of~~ updating a console on the selected target server with information indicating that the service is resident on the selected target server.

31. (currently amended) A method as defined in claim 1, further comprising ~~the step of:~~ de-installing a service from a server, comprising ~~the steps of~~:
displaying the icon representing the service;
displaying [[a ]]the icon representing the server on which the service is installed;
and utilizing the icon representing the service and the icon representing the server to initiating the de-installation of the selected service from the server on which it was installed.

32. (currently amended) A method according to claim 31 further comprising ~~the step of~~ separating icon representing the service from the icon representing the server.

33. (currently amended) A method according to claim 31 further comprising ~~the step of~~ testing whether the selected server is a valid computing platform for de-installation of the service.

34. (currently amended) A method according to claim 31 further comprising ~~the step of~~ copying data file changes specific to the service back to a storage medium from which the data file changes originated prior to installation.

9

**Page 46**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

### REMARKS

Claims 1-34 are pending in this application and are rejected under 35 U.S.C. 102 (b) as being anticipated by U.S. Patent 6,381,742 B1 ("Forbes et al.").

For a claim to be anticipated, all of the limitations of the claim must be present in a single reference.

Claim 1 has been amended to include recitations which more clearly define the invention and which also distinguish Applicants' invention from the teaching of Forbes et al.

Amended Claim 1 now recites:

1. In a system having a plurality of servers with operating systems that differ, operating in disparate computing environments, wherein each server includes a processor and an operating system including a kernel **a set of associated local system files compatible** with the processor, a method of providing at least some of the servers in the system with secure, executable, applications related to a service, wherein the applications may be executed in a secure environment, wherein the applications each include an object executable by at least some of the different operating systems for performing a task related to the service, the method comprising the steps of:

storing in memory accessible to at least some of the servers a plurality of secure containers of application software, each container comprising one or more of the executable applications and a set of associated system files required to

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

execute the one or more applications, for use with a local
kernel residing permanently on one of the servers; wherein the
set of associated system files are compatible with a local
kernel of at least some of the plurality of different
operating systems, the containers of application software
excluding a kernel, ~~and~~ wherein some or all of the associated
system files within a container stored in memory are utilized
in place of the associated local system files <u>that remain</u>
resident on the server ~~prior to said storing step~~., <u>wherein</u>
<u>said associated system files utilized in place of the</u>
<u>associated local system files are copies or modified copies of</u>
<u>the associated local system files that remain resident on the</u>
<u>server, and wherein the application software cannot be shared</u>
<u>between the plurality of secure containers of application</u>
<u>software, and wherein each of the containers has a unique root</u>
<u>file system that is different from an operating system's root</u>
<u>file system</u>.

    Support for the amendments in claim 1 can be found within
the specification.

    For example:
    At paragraph [54] the following text is found:

    "In embodiments of the invention, all applications within
    a given container have their own common root file system
    exclusive thereto and unique from other containers and
    from the operating system's root file system."

    Figure 6 illustrates that system files from the
underlying operating system are used independent of system
files in the container. In the instant invention system files

**Page 48**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
—————————————————/

within the container are application specific and are distinct
from and system files within the OS.

Figure 9 shows that system files from the underlying
operating system are used by operating system applications
wherein system files from the container are used by
applications associated with the container.

At paragraph [91] the following text is recited:

"Turning now to Figure 1, a system is shown having a
plurality of servers 10a, 10b. Each server includes a
processor and an independent operating system. Each
operating system includes a kernel 12, hardware 13 in the
form of a processor and a set of associated system files,
not shown. Each server with an operating system
installed is capable of executing a number of application
programs. Unlike typical systems, containerized
applications are shown on each server having application
programs 11a, 11b and related system files 11c. These
system files are used in place of system files such as
library and configuration files present typically used in
conjunction with the execution of applications."
(underlining added)

At paragraph [92], the following text is recited:

"Figure 2 illustrates a system in accordance with the
invention in which multiple applications 21a, 21b, 21c,
21d, 21e, and 21f can execute in a secure environment on
a single server. This is made possible by associating
applications with secure containers 20a, 20b and 20c.

**Page 49**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

> Applications are segregated and execute with their own
> copies of files and with a unique network identity.  In
> this manner multiple applications may contend for common
> resources and utilize different versions of system
> files.  Moreover, applications executing within a secure
> container can co-exist with applications that are not
> associated with a container, but which are associated
> with the underlying operating system." (underlining
> added)

At paragraph [94]the following text is recited:

> "The Secure application containers 20a, 20b and 20c are
> shown in Figure 2 in which each combines un-installed
> application files on a storage medium or network,
> application files installed on a computer, and system
> files. The container is an aggregate of all files
> required to successfully execute a set of software
> applications on a computing platform. In embodiments of
> the invention, containers are created by combining
> application files with system files."

Paragraph [107] clearly teaches the relationship between
files and containers:

> "It can be seen from Figure 6 that each application
> executing associated with a container 20a or 20b, or
> contained within a container 20a or 20b, is able to
> accesses files that are dedicated to the container.
> Applications with a container association, that is,
> applications contained within a container, are not able
> to access the files provided with the underlying

13

**Page 50**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

operating system of the compute platform 40 upon which they execute.   Moreover, applications with a container 20a association are not able to access the files contained in another container 20b." (underlining added)

At paragraphs 112, 117, 121, 122, and 131, the following text is found which supports the amendments to Claim 1.

[112] In a first embodiment all files are exclusive. That is, each container has a separate physical copy of the files required by applications associated with the container.  In future embodiments any files that is read-only will be shared between containers.
(underlining added)

[117] Figure 3 illustrates container creation.  The result of container creation is the collection of files required by applications associated with the container and the assembly of container specific configuration information.  Container files include both those files provided by an operating system distribution and those files provided by an application install media or package file.
(underlining added)

[121] Referring once again to Figure 3, applications may come from third party installation media on CDROM, package files 30, or as downloads from a web site, etc. Once installed in the container the applications become unique to the container in the manner described way that has been described heretofore.
(underlining added)

14

**Page 51**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

[122] The second method employed to create a container
file system uses an existing server, for example a
computer or server already installed at a customer site.
This is also shown in Figure 3. The applications of
interest may have been installed on an existing server
before the introduction of the software and data
structures in accordance with this invention. <u>Files are</u>
<u>copied from the existing server 32, including system</u>
<u>files</u> and application specific files to network storage.
Once the files are copied from the existing server a
container is created from those files.
(underlining added)

[131] In some embodiments of the invention, the method
involves installing at least one of the pluralities of
applications in a <u>container's own root file system.</u>
(underlining added)

Applicants would respectfully like to point out one
significant distinction between the invention of Forbes et al.
and the instant invention defined in the amended claims of
this invention; and more particularly amended Claim 1.

Applicants' claimed invention is defined as having a
plurality of servers with operating systems that differ,
operating in disparate computing environments. Applicants'
claimed invention is defined as having "secure" containers of
application software which include OS files that are <u>copies or</u>
<u>modified copies</u> of OS files while preserving the original OS
files by "not" overwriting them. These OS file copies reside
with each container and are modified if necessary so as to be
compatible with the applications that are to be run from any

**Page 52**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

given container. That is to say one container may be running
an application that is compatible with Solaris 8, and another
container may be running an application that has been written
for and compatible with Solaris 10. Therefore, different
containers on a single server are capable of running
applications designed for different operating systems.

In contrast, Forbes et al. provide a software package
manager that uses a distribution unit containing components
for a software package and a manifest file that describes the
distribution unit to manage the installation, execution, and
uninstallation of software packages on a computer. Information
in the manifest file pertaining to a software package is
stored in a code store data structure upon installation of the
package. The manifest file also contains information that
permits the software package manager to resolve any software
dependencies upon installation. The software package manager
uses the code store data structure to locate the required
components when the software is executed and to remove the
components appropriately when the software is uninstalled.

Therefore, Forbes et al. teach a software package manager
for running a software package on a system for which it was
intended to run. More particularly, if the system was written
or coded to be run on Windows XP, Forbes et al.'s package
manager can execute on Windows XP.

Since the teaching of Forbes et al. directly instructs
replacing older versions of software with newer versions by
writing over older versions with newer versions, Forbes et al.

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

are not capable of having different versions run under the same Operating System together.

Applicants provide containers that are isolated and wherein each container has the necessary operating system files for an application to run and wherein different containers may have different versions of the same software.

Forbes et al. do not allow this. Forbes et al. teach replacement of older files with newer versions.

There is not a hint or a suggestion of having different versions of the same software on the system at the same time. There is no hint or suggestion of the provision of isolated containers of software to allow this.

Turning now to Fig. 3b of Forbes et al., the drawing (below) illustrates that contrary to Applicants' claimed invention, files are not copies in the Forbes et al. patent, they are replacements.  This difference is important. Replacing an operating system file as Forbes et al. do, would not allow Applicants' claimed invention to function in the way in which it was designed.

In Forbes et al., boxes 343 and 353 show <u>removing</u> an older file and <u>replacing that older file</u> with an updated file. Boxes 359 and 361 indicate the same; "remove and replace". Since these files are removed and replaced, Forbes et al. do not use an isolated "<u>copy</u>" that is stored within a container. More particularly, Forbes et al. do not teach multiple

17

**Page 54**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

containers each having isolated copies or modified copies of
system files in each container.

     Not only do Forbes et al. not have the required isolation
afforded by the method defined in amended Claim 1, by writing
over or removing a file, the original files are not available
for use in building/creating other containers. Since
containers cannot share application files in Applicants'
claimed invention, Forbes et al. teach a system which would
not afford a plurality of <u>isolated</u> different containers to be
created.  For containers to be isolated from one another,
application files cannot be shared between them. Forbes et al
have a single instance installation of a single software
program and are not concerned with multiple software programs
in different containers.

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**

U.S. Patent          Apr. 30, 2002          Sheet 6 of 8          US 6,381,742 B2



FIG. 3B

Further instances that files are not copied but are replaced in Forbes et al.'s system are found at column 2, line 66, through column 3, line 3.

19

**Page 56**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

"During the installation, the package manager can
optionally scan the code store data structure to
determine if a component to be installed already exists
on the computer and updates the code store data structure
with the location of the later version of the component."

Col 6 line 65 through col 7 line 2 states "Fred's
Software Company also creates a "manifest" file 207
describing the CoolestApp. The CoolestApp manifest file
207 contains information about CoolestApp, including the
name of the CoolestApp distribution unit 209, the version
number of the software package (all components in the
distribution unit 209 have the same version number in
this embodiment), and the operating systems under which
the CoolestApp executes. Fred's Software Company bundles
the CoolestApp distribution unit 209 and manifest file
207 into a distribution unit file 205 for storage on the
server 201."

The paragraph above from Forbes et al. indicates that the
Operating System must be compatible with the software
application. It specifies that the software application is
tied to the version of the Operating System.

Thus, in Forbes et al., files being installed must be
consistent with the underlying OS.

In Forbes et al., the files, and hence the application
being installed, are used with the existing OS.  The files are
not stored into an isolated container as there are not
multiple containers of application software. The files in

20

**Page 57**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

Forbes et al. are not isolated from the OS; and they are not
able to run on an incompatible OS or version of OS.

Col 9 lines 13-18 states: "The package manager checks the
name and version of the software package contained in the
manifest file against the code store data structure to
determine if the software package has already been installed
(step 303). If so, the package manager exits (step 321)."

Thus, Forbes et al. teach that if the files exist on the
system then the install exits.  That is, one instance of the
application exists.  The files do not exist in isolated
containers nor do multiple versions/copies exist nor are
multiples capable of executing correctly.

Col 10, lines 20-43, states: "If the newly stored
component is a newer version of the previously stored
component (step 339) and the code store data structure entry
for the previously installed software package that references
the older version does not indicate it is version dependent
(step 341), the package manager removes the older version from
the directory in which it is stored (step 343) and updates the
code store data structure entry for the previously installed
software package to point to the newer version (step 345). If
there is a version dependency noted, the package manager
leaves the older version in the directory (step 347).

If the newly stored component is older that the
previously stored component (step 349) and the software
package does not indicate a version dependency (step 351), the
package manager removes the older version from the newly
created directory (step 353) and updates the code store data

**Page 58**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

structure entry for the newly installed software package to
point to the newer version (step 355). As before, if there is
a version dependency noted, the package manager does nothing
to the older version (step 347).

If the components are the same version, the package
manager chooses one to remove from its directory (step 359)
and updates the corresponding entry to point to the other
component (step 361)."  (underlining added).

This text from Forbes et al., clearly teaches that newer
versions overwrite existing older versions and so forth.  In
Forbes et al., a single "file" is the result.  Forbes et al.
do not teach that multiple copies of system files are used.
There is no definition of an isolated environment in which
applications execute.

In contrast, the instant invention, as defined in amended
Claim 1, recites that containers have a unique root file
system such that container files are distinct form other
applications and from the operating system software.

Therefore, the instant invention as defined in Claim 1,
creates the ability for multiple applications, including
applications of the same type, to be able to execute correctly
on the same Operating System.  By way of example,
multiple Oracle database managers are able to execute
correctly on the same operating system in a container context
as defined in Claim 1.  This is not possible in the Forbes et
al. invention.

22

**Page 59**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

It is significant that multiple Oracle/SQL
Server/Sybase/CRM/App servers/ etc. can execute correctly on
the same Operating System.  The number of OS images needed,
along with the associated license and management costs are
greatly diminished. This enables a new and unique ability for
combining, deploying and managing applications.


Claim 5 defines:


A method as defined in claim 2, further comprising the step of
modifying at least some of the associated system files in
plural containers to provide an association with a container
specific identity assigned to ~~the~~ a particular container.


With regard to amended claim 5, Forbes et al. do not have
plural containers of application software as defined in Claims
1 or 2 and do not provide an association with a container
specific identity. Forbes et al. only teach having a single
application not plural applications and make no mention of a
container specific identity.


Claim 6 defines:


A method as defined in claim 2, comprising the step of
assigning a unique associated identity to each of a plurality
of the containers, wherein the identity includes at least one
of IP address, host name, and MAC address.


The Examiner states in the Office Action that


"The teachings of Forbes et al (Forbes et al Abstract, col 2
lines 33-col. 3 line 56, figures 1-4 and associated

23

**Page 60**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports installation, execution/runtime aspects (i.e. assigning a unique identity…") of predetermined applications/associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2 lines 38-col 3 lines 49 clearly encompasses the limitations as broadly interpreted by the examiner) suggest such limitations."

Applicants would respectfully like to point out that Claim 6 importing the limitations of amended claim 1 recites:

In a system having a plurality of servers with operating systems that differ, operating in disparate computing environments, wherein each server includes a processor and an operating system including a kernel **a set of associated local system files compatible** with the processor, a method of providing at least some of the servers in the system with secure, executable, applications related to a service, wherein the applications may be executed in a secure environment, wherein the applications each include an object executable by at least some of the different operating systems for performing a task related to the service, the method comprising the steps of:
storing in memory accessible to at least some of the servers a plurality of secure containers of application software, each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications,

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

for use with a local kernel residing permanently on one of the servers; wherein the set of associated system files are compatible with a local kernel of at least some of the plurality of different operating systems, the containers of application software excluding a kernel, wherein some or all of the associated system files within a container stored in memory are utilized in place of the associated local system files that remain resident on the server., wherein said associated system files utilized in place of the associated local system files are copies or modified copies of the associated local system files that remain resident on the server, and wherein files cannot be shared between the plurality of secure containers of application software, and wherein each of the containers each has a unique root file system that is different from the operating system's root file system, wherein each container has an execution file associated therewith for starting the one or more applications and further comprising the step of assigning a unique associated identity to each of a plurality of the containers, wherein the identity includes at least one of IP address, host name, and MAC address.

Many of the differences in Claim 6 and the teachings of Forbes et al. have been discussed above in this response, with regard to Claim 1.

However, Forbes et al. do not teach:

- Providing secure containers;
- Containers that have copies of OS files

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed:  **09/13/2004**
_____/

- Containers having a unique identity and having a unique
  root file system different from the root file system of
  the underlying OS under which the containers run; and

- assigning a unique associated identity to each of a
  plurality of containers, since Forbes doesn't teach "a
  plurality of containers" wherein each identity includes
  an IP address, host name or Mac Address.

The Examiner repeatedly points to col. 2 and col. 3 of
Forbes et al. for teaching of the present invention. However,
Applicants cannot find such teaching, and if the Examiner is
of the opinion that this claim is anticipated, Applicants
would be appreciative if the Examiner would indicate
"specifically" where these limitations are found in Forbes et
al.

In contrast, Forbes et al. teach the installation of a
single software program into a system for which the software
and OS are compatible.  There is no hint or suggestion in
Forbes et al. of storing in containers modified copies of OS
system files so that software not designed for a particular OS
can run.

Claim 7 defines:

A method as defined in claim 2 further comprising the step of
modifying at least some of the system files to define
container specific mount points associated with the container.

The Examiner has used essentially the same passages
(below) from col. 2 to col. 3 to suggest that the Claim is
anticipated.

**Page 63**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects (i e.,' modifying at least some of the system files ... define container specific mount points ') of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such limitations.

    Notwithstanding, Forbes et al. do not provide the steps
of:
"storing in memory accessible to at least some of the servers
a plurality of secure containers of application software, each
container comprising one or more of the executable
applications and a set of associated system files required to
execute the one or more applications, for use with a local
kernel residing permanently on one of the servers; wherein the
set of associated system files are compatible with a local
kernel of at least some of the plurality of different
operating systems, the containers of application software
excluding a kernel, wherein some or all of the associated
system files within a container stored in memory are utilized
in place of the associated local system files that remain
resident on the server., wherein said associated system files
utilized in place of the associated local system files are
copies or modified copies of the associated local system files
that remain resident on the server, and wherein files cannot
be shared between the plurality of secure containers of

**Page 64**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

application software, and wherein each of the containers each
has a unique root file system that is different from the
operating system's root file system, wherein each container
has an execution file associated therewith for starting the
one or more applications."

Furthermore and more importantly, with reference to Claim
7, Forbes et al. do not modify at least some of the system
files to define container specific mount points associated
with the container. As was pointed out earlier Forbes et al.
do not provide containers.

Claim 9 is "a method as defined in claim 2, wherein
server information related to hardware resource usage
including at least one of CPU memory, network bandwidth, and
disk allocation is associated with at least some of the
containers prior to the applications within the containers
being executed."

Claim 9 imports all of the limitations of amended Claim 1
and claim 2 from which it depends. Furthermore, Claim 9
defines within the method of Claim 2, server information
related to hardware resource usage including at least one of
CPU memory, network bandwidth, and disk allocation is
associated with at least some of the containers prior to the
applications within the containers being executed.

There is no such disclosure in Forbes et al. and
Applicants would appreciate if the Examiner could point the
Applicants to such disclosure by indicating the specific page
and line number where this is taught. A careful read of col.

28

**Page 65**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

2 and col. 3 and the figures does not disclose the claimed
limitations.

The Examiner has provided essentially the same general
statement below:

> The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and
> associated descriptions, whereas the use of a software package manager in a network
> environment using a distribution unit containing components for a software package and
> manifest file that supports the installation, execution/runtime aspects (i.e., ' server information
> related to hardware resource usage ... associated with ... prior to the applications ... executed ')
> of predetermined applications /associated services across all types of code/operating systems, so
> as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col.
> 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner.)
> suggest such limitations.

However, the teachings of Forbes et al. in the Abstract
and in Col. 2, line 33 to Col. 3, line 56, only disclose the
following:

### *Abstract*

*A software package manager uses a distribution unit containing
components for a software package and a manifest file that
describes the distribution unit to manage the installation,
execution, and uninstallation of software packages on a
computer. Information in the manifest file pertaining to a
software package is stored in a code store data structure upon
installation of the package. The manifest file also contains
information that permits the software package manager to
resolve any software dependencies upon installation. The
software package manager uses the code store data structure to
locate the required components when the software is executed
and to remove the components appropriately when the software
is uninstalled.*

**Page 66**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

*Col. 2, line 33 to Col. 3, line 56*

*The above-mentioned shortcomings, disadvantages and problems are addressed by the present invention, which will be understood by reading and studying the following specification.*

*A software package manager uses a distribution unit containing components for a software package and a manifest file that describes the distribution unit to manage the installation, execution, and uninstallation of software packages on a computer. For installation, the package manager acquires the manifest file and parses it to learn if the software package depends on any additional components. The package manager resolves any dependencies by acquiring a distribution unit containing the needed component and installs the dependency's distribution unit as described below. Because dependencies can be nested within dependencies, the package manager recursively processes all the dependencies before finishing the installation of the software package that depends upon the additional components.*

*The software package manager acquires the distribution unit and extracts the components in the distribution unit into a directory on the computer. The package manager causes the operating system of the computer to install the software. The package manager then updates a code store data structure with information in the manifest file. The fields in the code store data structure contains such information as the name and version of the distribution unit, a list of the components and their location on the computer, and the source of the distribution unit. Additional fields in the code store data structure can also contain a component version, a component data type, and a digital signature if one was affixed to the distribution unit.*

*During the installation, the package manager can optionally scan the code store data structure to determine if a component to be installed already exists on the computer and updates the code store data structure with the location of the later version of the component.*

*When a user requests execution of software, the package manager uses the code store data structure to locate the appropriate components for the operating system to use. When the user requests the uninstallation of a software package, the package manager deletes the appropriate components from*

**Page 67**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

*the computer and updates the code store data structure
accordingly.*

*The manifest file and distribution unit optionally are
combined into a distribution unit file.*

*The manifest file format is common across all types of code
and operating systems and easily extended to embrace new code
types as they arise. The manifest file and distribution unit
can be stored on all types of media from traditional magnetic
and optical disks to networked servers. The distribution units
for dependencies do not have to reside on the same type of
media as the distribution unit or the manifest file that
refers to the dependency. More than one distribution unit can
be resident in a distribution unit file and a distribution
unit file can contain a mixture of distribution units
containing different code types.*

*Thus, the software package manager, the manifest file, the
distribution unit and the code store data structure of the
present invention solve the problems with existing
distribution mechanisms. The manifest file is not particular
to a particular code type or operating system and allows for
the specification of nested software dependencies. Because the
manifest file contains the location of the distribution units
for any dependencies, the software package manager can acquire
and install the dependencies without requiring manual
intervention by the user. Different types of distribution
units can be mixed in a distribution unit file so that a
single mechanism is used to acquire and install all types of
code.*

*The code store data structure maintained by the software
package manager contains information about the installed
software such as version and installation location, and is
used to resolve version discrepancies among software programs
that share components. The code store data structure is used
by the package manager to locate necessary components when the
software is executed so that a component stored in one
directory can be readily shared by software programs with
components in different directories. Finally, the code store
data structure eases the uninstallation process by
centralizing all the information about installed components.*

**Page 68**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

    Once again, it must be emphasized that there is no method
of containerizing software applications in containers wherein
the limitations of amended Claims 1, 2 and 9 are met. The
Examiner recites the text above and states that the
limitations of Claim 9 are present, however they are not.

    Applicants believe that the amendments to Claim 1
clearly distinguish Claim 9 from the cited Forbes et al.
reference.

    If the Examiner is of the opinion that amended Claim 1 is
anticipated by Forbes et al., Applicants would appreciate if
the Examiner would specifically point out where each
limitation in amended base Claim 1 is found in the text above.
Furthermore, Applicants would be appreciative if the Examiner
would point out where the limitations of Claim 2 and 9 can be
found.  It is not sufficient or instructive to Applicants to
recite that the text above clearly encompasses the claimed
limitations, as broadly interpreted by the Examiner.  It is
not clear, nor is it evident, that the claimed features are
disclosed by Forbes et al.

    Claim 10 has been amended to more clearly define the
invention.

10. (amended) A method as defined in claim 2, wherein in
operation when an application residing within a container ~~are~~
is executed , said applications ~~within a container have~~ has no
access to system files or applications in other containers or
to system files within the operating system during execution
thereof ~~if those applications or system files are read/write~~
~~files.~~

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

With regard to the patentability of Claim 10, this claim imports the patentable features of Claims 1 and 2 from which it depends. Furthermore, Claim 10 defines application software within a container being isolated from other containers. Forbes et al. do not have plural containers and therefore have no isolation between containers.

Claim 13 has been amended as shown and now defines:

A method as defined in claim 1 further comprising the step of associating with a plurality of containers a stored history of when processes related to applications within the container are executed for at least one of, tracking statistics, resource allocation, and for monitoring the status of the application.

Forbes et al. do not disclose a history of file usage or tracking of processes within an application. Once Forbes et al.'s application is executing, Forbes et al. make no suggestion or hint that there is interaction with the application. Interaction with the application is required to store container history of tracking statistics, or resource allocation, for monitoring the status of an application.

Claim 14 has been rejected as being anticipated by Forbes et al.

The Examiner has said that:

33

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation (i.e., ' creating containers prior to ... containers are created by ... determining which files are being used '), execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,line 48), clearly encompasses the claimed limitations as broadly interpreted by the examiner,) suggest such limitation.


Amended Claim 14 defines:  A method as defined in claim 1
comprising the step of creating containers prior to said step
of storing containers in memory, wherein containers are
created by:
a) running an instance of a service on a server;
b) determining which files are being used; and,
c) copying applications and associated system files to memory
<u>without overwriting the associated system files so as to</u>
<u>provide a second instance of the applications and associated</u>
<u>system files</u>.


Claim 14 with the claim limitations of amended Claim 1
from which it depends defines:


14. (amended) In a system having a plurality of servers with
operating systems that differ, operating in disparate
computing environments, wherein each server includes a
processor and an operating system including a kernel **a set of**
**associated local system files compatible** with the processor, a
method of providing at least some of the servers in the system
with secure, executable, applications related to a service,
wherein the applications may be executed in a secure
environment, wherein the applications each include an object

34

**Page 71**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

executable by at least some of the different operating systems
for performing a task related to the service, the method
comprising the steps of:

storing in memory accessible to at least some of the servers a
plurality of secure containers of application software, each
container comprising one or more of the executable
applications and a set of associated system files required to
execute the one or more applications, for use with a local
kernel residing permanently on one of the servers; wherein the
set of associated system files are compatible with a local
kernel of at least some of the plurality of different
operating systems, the containers of application software
excluding a kernel, ~~and~~ wherein some or all of the associated
system files within a container stored in memory are utilized
in place of the associated local system files <u>that remain</u>
resident on the server ~~prior to said storing step~~., <u>wherein
said associated system files utilized in place of the
associated local system files are copies or modified copies of
the associated local system files that remain resident on the
server, and wherein the application software cannot be shared
between the plurality of secure containers of application
software, and wherein each of the containers each has a unique
root file system that is different from the operating system's
root file system</u>; and,
comprising the step of creating containers prior to said step
of storing containers in memory, wherein containers are
created by:
a) running an instance of a service on a server;
b) determining which files are being used; and,
c) copying applications and associated system files to memory
<u>without overwriting the associated system files so as to</u>

35

**Page 72**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

<u>provide a second instance of the applications and associated
system files</u>.

    The Examiner suggests in the paragraph below, taken from
the Office Action, that Claim 14 is anticipated because:

> The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and
> associated descriptions, whereas the use of a software package manager in a network
> environment using a distribution unit containing components for a software package and
> manifest file that supports the installation, execution/runtime aspects of predetermined
> applications /associated services across all types of code/operating systems, so as to allow easily
> extending new code types (i.e., ' assigning an identity to the containers … containers are created
> by … including at least one of … a unique IP address … installing the container … testing the
> applications and files ') as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly
> encompasses the claimed limitations as broadly interpreted by the examiner.) suggest such
> limitations.

    It should become readily apparent that the reference to
citations taken from Forbes et al. in the paragraph above do
not disclose the method steps within amended Claim 14.  If the
Examiner disagrees, Applicants would be appreciative if the
Examiner would indicate specifically by indicating the line
numbers and specific passage(s) where each claimed feature
exists within the Forbes et al., patent.

    Claim 15 defines: A method as defined in claim 14
comprising the steps of:
assigning an identity to the containers including at least one
of a unique IP address, a unique Mac address and  an estimated
resource allocation;
installing the container on a server; and,

36

**Page 73**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

testing the applications and files within the container.

Claim 15 imports the limitations of Claim 14, defined above, and further defines steps of assigning an identity to the containers. It should be noted that Forbes et al. do not have plural containers.  Furthermore, assigning a unique IP address or Mac Address to plural containers is not suggested in Forbes et al. as they merely run a single instance of a software application. They do not have plural containers each having a software application each with an associated IP or Mac Address associated with a respective container where the software resides.

Forbes et al. teach that a software distribution mechanism is used with a networked system environment.  The application installed, by means of Forbes et al., takes on the identity, defined as one or more of IP address, MAC, hostname, of the underlying OS.  Therefore, the application installed by Forbes et al. assumes the identity supplied by the OS.  The instant invention claims that an application associated with a container assumes the identity, of the IP address, or MAC, hostname, from container with which it is associated and resides in, and not from the OS.

After a careful reading of the Forbes et al. patent, it becomes evident that there is no mention of an application having an associated network identity.  Forbes et al. teach that a manifest file can reside on network store; files can be accessed from a network.  However, there is no teaching that an application assumes a network identity.

**Page 74**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

Claim 16 defines: A method as defined in claim 1 comprising the step of creating containers prior to said step of storing containers in memory, wherein a step of creating containers includes:
using a skeleton set of system files as a container starting point and installing applications into that set of files.

This claim is clearly novel as Forbes et al. do not create or provide plural containers as defined in Claim 1 or 16. In view of this, the specific implementation defined in Claim 16 is not suggested by Forbes et al.

Claim 17 has been rejected under 35 U.S.C. 102 (b) for the same reasons as Claim 1 has been rejected. Claim 17 has been amended in a similar fashion to the amendments of Claim 1.

Claim 17 defines a system having a plurality of secure containers of associated files accessible to, and for execution on, one or more servers, each container being mutually exclusive of the other, such that read/write files within a container cannot be shared with other containers, each container of files is said to have its own unique identity associated therewith, said identity comprising at least one of an IP address, a host name, and a Mac_address; wherein, the plurality of files within each of the plurality of containers comprise one or more application programs including one or more processes, and associated system files for use in executing the one or more processes wherein the associated system files are files that are copies of files or modified copies of files that remain as part of the operating system, each container having its own execution file

38

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

associated therewith for starting one or  more applications,
in operation, each container utilizing a  kernel resident on
the server and wherein each container exclusively uses a
kernel in an underlying operation system in which it is
running and is absent its own kernel; and,
a run time module for monitoring system calls from
applications associated with one or more containers and for
providing control of the one or more applications.


   Applicants have taken the liberty of re-writing Claim 17,
more clearly illustrating the features within the claim.

- A system having a plurality of secure containers of
  associated files accessible to, and for execution on, one
  or more servers,

- each container being mutually exclusive of the other,
  such that read/write files within a container cannot be
  shared with other containers,

- each container of files is said to have  its own unique
  identity associated therewith, said identity  comprising
  at least one of an IP address, a host name, and a
  Mac_address;

- wherein, the plurality of files within each of the
  plurality of containers comprise one or more application
  programs including one or more processes, and associated
  system files for use in executing the one or more
  processes

- <u>wherein the associated system files are files that are
  copies of files or modified copies of files that remain
  as part of the operating system</u>,

**Page 76**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

- each container having its own execution file associated therewith for starting one or more applications, in operation,

- each container utilizing a kernel resident on the server and wherein each container exclusively uses a kernel in an underlying operation system in which it is running and is absent its own kernel; and,

- a run time module for monitoring system calls from applications associated with one or more containers and for providing control of the one or more applications.

➢ Forbes et al. do not have a system having a plurality of secure containers of associated files accessible to, and for execution on, one or more servers; in fact Forbes et al. make no mention of containers at all, and if one were to incorrectly construe Forbes et al. as having a secure container for containing their software, this would in no way be a teaching of a plurality of secure containers having the features which follow in Claim 17.

➢ Forbes et al. do not teach that each container is mutually exclusive of the other, such that read/write files within a container cannot be shared with other containers. Since Forbes et al. make no mention of plural containers, they clearly do not teach mutual exclusivity between containers and make no reference to an absence of file sharing of read/write files with other containers.

➢ Forbes et al. do not teach containers so they clearly do not teach or suggest that each container of files is said to have its own unique identity associated therewith,

**Page 77**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

said identity comprising at least one of an IP address, a host name, and a Mac address.

➢ Forbes et al. do not teach that the plurality of files within each of the plurality of containers comprise one or more application programs including one or more processes, and associated system files for use in executing the one or more processes, as Forbes et al. do not teach a plurality of containers.

➢ Forbes et al. replace and overwrite their software with a latest version so they teach away from the limitation that the associated system files are files that are copies of files or modified copies of files that remain as part of the operating system.

➢ Forbes et al. do not teach plural containers wherein each container having its own execution file associated therewith for starting one or more applications, in operation. Forbes et al. only teach a single instance of a single software application.

➢ Forbes et al. do not teach plural containers wherein each container utilizing a kernel resident on the server and wherein each container exclusively uses a kernel in an underlying operation system in which it is running and is absent its own kernel; and,

➢ a run time module for monitoring system calls from applications associated with one or more containers and for providing control of the one or more applications.

**Page 78**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

After thoroughly reading the Forbes et al. cited patent and considering the invention defined in Claim 17, it becomes evident that Forbes et al. do not disclose each and every element in Claim 17. In fact, it is questionable whether Forbes et al. disclose any of the patentable elements within Claim 17. In summary, Forbes et al. do not define multiple containers and Forbes et al. do not define any isolation of files. Forbes et al. teach that more than one software distribution unit exists and that files may be shared. In Forbes et al's teaching, a distribution replaces an older version and is not isolated.

Claim 18 of the instant invention defines: A computing system as defined in claim 17, further comprising a scheduler comprising values related to an allotted time in which processes within a container may utilize predetermined resources.

Forbes et al. do not have a scheduler comprising values related to an allotted time in which processes within a container may utilize predetermined resources.

In the Forbes teaching, a single application starts and there is no further interaction with the application by the package manager taught by Forbes et al. According to the invention defined by Claim 18 there is a scheduler in addition to the operating system that interacts with the application while it is executing.

Claim 19 has been rejected under 35 U.S.C. 102 (b) as being anticipated by Forbes et al.

**Page 79**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

The Examiner has stated:

> The teachings of Forbes et al (Forbes et al Abstract, col. 2,lines 33-col. 3,line 56, figures 1-4 and associated descriptions, whereas the use of a software package manager in a network environment using a distribution unit containing components for a software package and manifest file that supports the installation, execution/runtime aspects of predetermined applications /associated services across all types of code/operating systems, so as to allow easily extending new code types as they arise (e.g., Forbes et al col. 2,lines 38-col. 3,lines 49), clearly encompasses the claimed limitations as broadly interpreted by the examiner,) suggest such limitations.

Applicants have carefully reviewed the above mentioned Abstract, Col. 2 to Col. 3 and figures 1-4 and respectfully disagree with the Examiner as to a finding of anticipation. For a claim to be anticipated each and every element must be present.

Claim 19, including the limitations of amended Claim 17 defines:

- A system having a plurality of secure containers of associated files accessible to, and for execution on, one or more servers,
- each container being mutually exclusive of the other, such that read/write files within a container cannot be shared with other containers,
- each container of files is said to have  its own unique identity associated therewith, said identity  comprising at least one of an IP address, a host name, and a Mac_address;

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed:  **09/13/2004**
_____/

- wherein, the plurality of files within each of the plurality of containers comprise one or more application programs including one or more processes, and associated system files for use in executing the one or more processes

- <u>wherein the associated system files are files that are copies of files or modified copies of files that remain as part of the operating system</u>,

- each container having its own execution file associated therewith for starting one or  more applications, in operation,

- each container utilizing a  kernel resident on the server and wherein each container exclusively uses a  kernel in an underlying operation system in which it is running and is absent its own kernel; and,

- a run time module for monitoring system calls from applications associated with one or more containers and for providing control of the one or more applications,

- wherein the run time module includes an intercepting module associated with the plurality of containers for intercepting system calls from any of the plurality of containers and for providing values alternate to values the kernel would have assigned in response to the system calls, so that the containers can run independently of one another without contention, in a secure manner, the values corresponding to at least one of the IP address, the host name and the Mac_Address; and

- further comprising a scheduler comprising values related to an allotted time in which processes within a container may utilize predetermined resources.

44

**Page 81**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

Forbes et al. do not teach:

➢ Forbes et al. do not have a system having a plurality of
secure containers of associated files accessible to, and
for execution on, one or more servers; in fact Forbes
makes no mention of containers at all, and if one were to
incorrectly construe Forbes as having a secure container
for containing his software, this would in no way be a
teaching of a plurality of secure containers having the
features which follow in claim 17.

➢ Forbes et al. do not teach that each container is
mutually exclusive of the other, such that read/write
files within a container cannot be shared with other
containers. Since Forbes et al. make no mention of plural
containers they clearly do not teach mutual exclusivity
between containers and make no reference to an absence of
file sharing of read/write files with other containers.

➢ Forbes et al. do not teach containers so they clearly do
not teach or suggest that each container of files is said
to have its own unique identity associated therewith,
said identity comprising at least one of an IP address, a
host name, and a Mac address.

➢ Forbes et al. do not teach that the plurality of files
within each of the plurality of containers comprise one
or more application programs including one or more
processes, and associated system files for use in
executing the one or more processes, as Forbes et al. do
not teach a plurality of containers.

45

**Page 82**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed:  **09/13/2004**
_____/

➢ Forbes et al. replace and overwrite their software with a latest version so they teach away from the limitation that the associated system files are files that are copies of files or modified copies of files that remain as part of the operating system.

➢ Forbes et al. do not teach <u>plural</u> containers wherein <u>each container having its own execution file</u> associated therewith for starting one or more applications, in operation. Forbes et al. only teach a single instance of a single software application.

➢ Forbes et al. do not teach <u>plural</u> containers <u>wherein each container</u> utilizing a  kernel resident on the server and <u>wherein each container exclusively uses a  kernel in an underlying operation system in which it is running and is absent its own kernel</u>; and,

➢ a run time module for monitoring system calls from applications associated with one or more containers and for providing control of the one or more applications.

➢ AND <u>more particularly Forbes et al. do not teach a run time module including an intercepting module associated with the plurality of containers for intercepting system calls from any of the plurality of containers and for providing values alternate to values the kernel would have assigned in response to the system calls, so that the containers can run independently of one another without contention, in a secure manner, the values corresponding to at least one of the IP address, the host name and the Mac Address;</u>

46

**Page 83**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

Since Forbes et al. do not teach a system wherein there is inception of system calls and subsequent interaction with the application after it is launched they do not teach system calls. More importantly, Forbes et al. do not include any hint or suggestion of having interception of system calls.

**Having system calls advantageously provides the ability to monitor the application as it executes and change parameters that are provided to and received from the operating system, thereby altering interaction with the operating system so as to allow the application to execute in an isolated and contained environment.**

Claim 20 is said to be anticipated by Forbes et al. for essentially the same reasons as Claim 17.

As Applicants have pointed out above, Claim 17 is patentable and therefore Claim 20 at least imports the patentable features of Claim 17. Furthermore, Claim 17 defines that the run time module performs:
monitoring resource usage of applications executing;
intercepting system calls to kernel mode, made by the at least one respective application within a container, from user mode to kernel mode;
comparing the monitored resource usage of the at least one respective application with the resource limits; and,
forwarding the system calls to a kernel on the basis of the comparison between the monitored resource usage and the resource limits.

Interception of system calls is not described anywhere within the Forbes et al. patent. Forbes et al. do not monitor

47

**Page 84**

In re Patent Application of:
**ROCHETTE ET AL.**
Serial No. **10/939,903**
Filed: **09/13/2004**
_____/

after their software execution begins. Therefore they do not
monitor/intercept/compare/ and forward system calls. When the
Forbes et al. software is fully loaded, it executes. In the
instant invention, after execution begins, the steps of
monitoring/intercepting/comparing and forwarding system calls
is performed. No such steps are taught by Forbes et al.


In view of the foregoing amendments to the claims and
remarks, it is respectfully submitted that the instant
application is now in condition for allowance.


Early and favorable reconsideration of the application
would be appreciated.


Should any minor informalities need to be addressed, the
Examiner is encouraged to contact the undersigned attorney at
the telephone number listed below.


Please charge any shortage in fees due in connection with
the filing of this paper, including Extension of Time fees, to
Deposit Account No. 50-1465 and please credit any excess fees
to such deposit account.

Respectfully submitted,

/CHRISTOPHER F. REGAN/
Christopher F. Regan
REG. NO. 34,906

Customer No.: 27975

Telephone: (407) 841-2330    Date:    September 3, 2008

48

**Page 85**